UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Greg R. Falconi,

    Plaintiff,

v.                                                                                         Civil Action No. 2:12-CV-37

Michael J. Astrue,
Commissioner of Social Security,

    Defendant.

## **OPINION AND ORDER**
(Docs. 8, 9)

Plaintiff Greg Falconi brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits for the period from July 1, 1988, his alleged disability onset date, through December 31, 1992, his date last insured. Pending before the Court are Falconi's motion to reverse the Commissioner's decision (Doc. 8), and the Commissioner's motion to affirm the same (Doc. 9). For the reasons stated below, the Court GRANTS Falconi's motion, DENIES the Commissioner's motion, and REMANDS for further proceedings and a new decision.

## **Background**

Falconi was 27 years old on his alleged disability onset date of July 1, 1988. He has a GED and experience working in the automotive industry. In 1978, Falconi joined the United States Army, attending jungle operations school in Panama and doing

reconnaissance in Nicaragua. (AR 626.) At some point within the next two years, he was treated at an army medical clinic in Germany. In January 1980, he was discharged from the military; a letter from the Department of the Army advised that Falconi was being "relieved from active duty . . . by reason of physical disability." (AR 231.)

Falconi has had no family contact since 1992. (AR 627.) He attempted to take college courses starting in January 1994, but withdrew five months later with an incomplete in all classes. (AR 253.) In 1994-1995, Falconi was convicted of burglary and attempted armed robbery. He apparently has an extensive criminal history in Ohio, New York, and Vermont, dating back to approximately 1985. (AR 626.) In 2000, Falconi was released from prison and gained employment in the service department of a Saab dealership. (AR 829.) Within two years, he had lost this job and was reportedly using heroin and exhibiting suicidal ideation. (AR 88.)

Falconi has had a longstanding problem with drugs, including heroin, cocaine, and marijuana; and has been diagnosed with polysubstance abuse. At the administrative hearing, he testified that he has been "drug-free" since approximately 2004 or 2005. (AR 831.) Falconi also has a history of mental health problems, and has been diagnosed with borderline personality disorder, antisocial personality disorder, anxiety disorder, bipolar affective disorder, depression, and suicidal ideation. (*See, e.g.,* AR 86-87, 247, 318, 336-39, 779, 797, 808.) The record reflects that, throughout the 1990s, Falconi overdosed on multiple occasions and attempted to hang himself in jail. (AR 829.)

In approximately 2004,[1] Falconi filed applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB), alleging disability beginning on July 1, 1988. (AR 13, 19-20.) The SSI application was adjudged "fully favorable" to Falconi, and he was found eligible to receive SSI beginning in October 2004. (AR 13, 18, 821.) The DIB application, on the other hand, was denied initially and upon reconsideration. In an attachment to his Request for Reconsideration, Falconi stated that his depression and mania were major impairments, disrupting his ability to work. (AR 22.) He also stated that the Army recorded he had a personality disorder and was "unable to maintain acceptable standards." (*Id.*) On November 10, 2010, Administrative Law Judge ("ALJ") Edward Hoban conducted a hearing on Falconi's disability application.[2] (AR 813-39.) Falconi appeared and testified, and was represented by counsel. On February 25, 2011, the ALJ issued a decision finding that Falconi was not disabled under the Social Security Act through December 31, 1992, the date last insured. (AR 13-18.) On February 4, 2012, the Appeals Council denied Falconi's request for review of the ALJ's decision, rendering it the final decision of the Commissioner. (AR 4-8.) Having exhausted his administrative remedies, Falconi filed the Complaint in this action on February 27, 2012. (Doc. 3.)

---

[1] The procedural history is unclear, but for purposes of the Court's review of the instant motions, the exact dates are irrelevant.

[2] Approximately six months earlier, an initial hearing was held on Falconi's disability application, at which time Falconi appeared and requested additional time to secure representation. (AR 840-50.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that

there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Hoban first determined that Falconi had not engaged in substantial gainful activity during the period from his alleged disability onset date of July 1, 1988 through his date last insured of December 31, 1992. (AR 15.) At step two, the ALJ found that, "[b]ased on the complete lack of evidence pertaining to the relevant period on record," there was no evidence of a medically determinable impairment during the period between Falconi's alleged disability onset date and the date last insured. (AR 17.) Alternatively, the ALJ noted that, even if there was evidence of a severe impairment, a 1995 letter from Falconi's counselor "tend[ed] to indicate that [Falconi's] drug and alcohol abuse would be material to any possible finding of disability." (*Id.*) The ALJ concluded that Falconi had not been under a disability from his alleged disability onset date through his date last insured. (AR 17-18.)

## **Standard of Review**

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but

cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the fact[-]finder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should consider that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## **Analysis**

Falconi contends that the ALJ erred in failing to find that he had a medically determinable mental health impairment during the alleged disability period. (Doc. 8 at 9.) More specifically, Falconi claims that the ALJ did not follow the evaluation process

6

outlined in Social Security Ruling (SSR) 83-20, and failed to fully develop the record, including obtaining expert medical testimony regarding a disability onset date. (*Id.* at 12, 14.) The Commissioner responds by generally asserting that the ALJ's determination that Falconi was not disabled during the alleged disability period was legally proper and supported by the record. (Doc. 9-1 at 4.) The Commissioner further argues that the process set forth in SSR 83-20 does not apply where, as here, the ALJ finds at step two that the claimant did not have a medically determinable impairment during the alleged disability period because of a lack of objective medical evidence establishing the existence of an impairment during that period. (*Id.* at 7-8).

It is true that the record contains no evidence, including objective medical evidence, from the alleged disability period, July 1988 through December 1992. Moreover, the Commissioner is correct that the regulations require that, "[i]n claims in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the [claimant] must be found not disabled at step 2 of the sequential evaluation process . . . ." SSR 96-4p, 1996 WL 374187, at *2 (July 2, 1996); *see also* 20 C.F.R. § 404.1508. However, the Commissioner fails to recognize the significance of the fact that, in this case, the Social Security Administration made a determination that Falconi was disabled as of October 19, 2004, the date on which it found Falconi eligible for SSI (Title XVI) benefits. (AR 13.) The ALJ did not disturb that finding, stating in his decision that this "fully favorable initial determination remains in effect." (AR 18.)

In cases like this, where a claimant has already been found disabled under another title of the Social Security Act, SSR 83-20 requires the ALJ to determine the onset date of disability and provides an analytical framework for determining that date.[3] *See Blea v. Barnhart*, 466 F.3d 903 (10th Cir. 2006); *Walton v. Halter*, 243 F.3d 703 (3d Cir. 2001); *Spellman v. Shalala*, 1 F.3d 357 (5th Cir. 1993); *Plumley v. Astrue*, No. 2:09-CV-42, 2010 WL 520271, at *5 (D. Vt. Feb. 9, 2010); *Moriarty v. Astrue*, No. 07-cv-342-SM, 2008 WL 4104139 (D.N.H. Aug. 28, 2008); *Miller v. Astrue*, No. 03 Civ. 2072 (LAP) (FM), 2008 WL 2540750 (S.D.N.Y. June 23, 2008). The Ruling states: "In addition to determining that an individual is disabled, the decision[-]maker must also establish the onset date of disability." SSR 83-20, 1983 WL 31249, at *1 (1983). In *Fontaine v. Astrue*, No. 07-18-P-S, 2007 WL 3023611, at *4 (D. Me. Oct. 12, 2007), the court specifically stated that SSR 83-20 applies where, as here, a plaintiff has been determined to be disabled "as the result of a grant of . . . SSI . . . benefits."[4]

The ALJ here failed to follow the framework set forth in SSR 83-20. Moreover, the ALJ relied heavily on the absence of objective medical evidence from the alleged disability period in determining that Falconi was not disabled during that period. Specifically, the ALJ stated: "[Falconi] has not submitted any medical evidence consisting of signs, symptoms, and laboratory findings from the period between 1988 and

---

[3] "Social Security Rulings are agency rulings published under the authority of the Commissioner of Social Security and are binding on all components of the Administration." *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990) (quotation marks omitted); *see* 20 C.F.R. § 402.35(b)(1).

[4] Conversely, courts have held that SSR 83-20 does not apply–and thus "no inquiry into onset date is required"–where there was no finding of disability. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir.1997); *see Fontaine*, 2007 WL 3023611, at *4 ("Inasmuch as [claimant] has not been determined to be disabled, the [ALJ] was not obliged to apply SSR 83-20.").

8

1992. In fact, the record is devoid of any medical evidence dated prior to 1995, several years after [Falconi's] date last insured."[5] It is true that, under SSR 83-20, "medical evidence serves as the primary element in the onset determination." SSR 83-20, 1983 WL 31249, at *2. But courts have found that if a claimant has already been found to suffer from a disabling impairment, objective medical evidence, while preferred, is not essential to resolving the onset date of that disability. *See, e.g., Moriarty*, 2008 WL 4104139, at *6 ("Nowhere in [SSR 83-20] is there any suggestion that the absence of medical records establishing an onset date is fatal to an individual's disability claim. In fact, the SSR provides just the opposite, specifically noting that in some cases it may be necessary to infer the onset date of a claimant's disability from non-medical evidence."). Although the ALJ was not required to cite SSR 83-20 by name (and he did not), and although minor deviations from the analysis set forth in the Ruling may be tolerated, *see, e.g., Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005); *Ware v. Barnhart*, No. 03-170-B-W, 2004 WL 1529266, at *2-3 (D. Me. June 24, 2004), the ALJ's singular focus on the lack of medical evidence from the insured period does not comply with the purpose of the Ruling, *see, e.g., Parmenter v. Astrue*, No. 08-CV-1132, 2010 WL 2884866, at *4 (N.D.N.Y. Apr. 23, 2010) (report adopted in relevant part by 2010 WL 2803418 (N.D.N.Y. July 15, 2010)) (finding ALJ erred in "adopt[ing] the position that Plaintiff was required to produce documents definitively demonstrating that his mental impairments were disabling" during the period between the alleged disability onset date

---

[5] Noteworthy, after the ALJ issued his decision, Falconi submitted evidence to the Appeals Council which, as discussed below, documents his treatment for substance abuse and mental health issues prior to the alleged disability onset date. (*See* AR 791-808.)

9

and the date the ALJ found the claimant disabled); *see also Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir. 1989) (noting that dearth of contemporaneous evidence does not necessarily preclude claimant's entitlement to a period of disability). Thus, the Court cannot find the ALJ's error harmless, and finds that remand is necessary so the ALJ may comply with the onset-date determination procedure set forth in SSR 83-20.

Furthermore, a thorough review of the record demonstrates that remand would not be a mere formality, as the record is ambiguous as to when functional limitations attributable to Falconi's mental impairments first manifested. *See NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969) (noting that courts are not required to "convert judicial review of agency action into a ping-pong game" where "remand would be an idle and useless formality"). There is ample medical evidence documenting that Falconi had significant mental health problems beginning as early as the mid-1980s.[6] A May 1984 hospital report written by Dr. N.J. D'Angelo lists as Falconi's diagnoses "Mixed substance abuse" and "Boarder line [sic] Personality Disorder," and states that Falconi "had a great deal of difficulty remaining within the policies and procedures of the therapeutic community [and] experienced the restrictions as criticism." (AR 797.) Other medical reports from around the same period state that Falconi had a history of polysubstance abuse, "[a]ntisocial behavior [for] 12 yea[r]s," and "antisocial personality disorder (drug dependence)." (AR 795, 808.)

---

[6] This fact distinguishes Falconi's claim from the claim in *Vella v. Commissioner of Social Security*, 394 F. App'x 755, 757 (2d Cir. 2010), cited by the Commissioner. In *Vella*, there was (a) a complete lack of medical records showing that the claimant had been hospitalized, diagnosed, or treated for any psychiatric impairment before or during the relevant period; and (b) a medical record from just after the relevant period which stated that the claimant had "no history of psychiatric hospitalization." *Id.*

Correctional center medical notes from approximately ten years later (January 1995) document that, while incarcerated, Falconi attempted suicide by hanging himself in his cell, and list antisocial personality disorder as a diagnosis. (AR 716.) An accompanying note following a psychological interview with Falconi states that he "made a serious suicide attempt after becoming overwhelmed with anxiety," and that he "[n]eeds to be evaluated for anxiety and [prescribed] . . . anti-depression medication." (AR 727.) Just days after being released from the correctional center in July 1995, medical notes document that Falconi was hospitalized for depression and suicidal ideation, and was diagnosed with "Major Depression" and "Substance Abuse." (AR 759; *see also* AR 754-55.) In August 1995, Falconi was back at the correctional center, and again attempted suicide and was diagnosed with antisocial personality disorder, in addition to drug addiction. (AR 719, 734.) In a Disability Report prepared by Falconi around this period (July 1995),[7] Falconi wrote that his condition first bothered him in 1989, and that he could not work because of recurrent major depression, attention deficit disorder, and posttraumatic stress disorder. (AR 781.) He further wrote that he was too depressed to do much of anything; he slept or isolated most of the day; and he had poor social skills and trouble with emotional control, following orders, and trusting others.

---

[7] This Disability Report was apparently filed as part of Falconi's 1994 application to the Social Security Administration. William Newhall, Director of Another Way, wrote in September 1995 that he assisted Falconi in preparing this application, and that it would have been successful had Falconi been available for appointments and not been incarcerated. (AR 790.) Newhall stated: "([Falconi] was too depressed to go to one appointment with Social Security . . . and his incarceration prevents further pursuit.)." (*Id.*) Newhall continued: "[Falconi's] SSI/SSDI application reports treatment at Northampton, Mass. VA Hospital pysch unit for depression, anxiety, and suicidal thoughts between 1990 and 1994 and also at Cambridge City Hospital (Massachusetts) in June 1995 (depression and suicidal feelings) and at the VA Hospital . . . [in] Boston Mass. in May 1995 (depression, drug use, manic-depression)." (*Id.*)

(*Id.*)  In September 1995, William Newhall, Director of Another Way, a center for chronically mentally ill individuals or homeless individuals with severe emotional problems, wrote that Falconi was "seriously depressed," used cocaine and heroin in the past to avoid dealing with reality, and had "many of the feelings (and habits) typical of teenagers who have experienced rejection and/or abandonment at an early age by parents and others (self-isolation, fantasy, depression, anger, refusal to face facts, childlike reaching out for help)."  (AR 790.)

Correctional center notes from approximately five years later (August 2000) list among Falconi's problems personality disorder and anxiety disorder; and document the prescription of Prozac, which is generally used to treat major depressive disorder and anxiety disorder.  (AR 318.)  The same problems were noted in September 2004 notes from the correctional center.  (AR 333, 336.)  Other notes from September 2004 indicate that Falconi had a "long history of psychiatric treatment"; was "seen by VA psychiatry"; and had "inpatient hospitalizations, outpatient treatment, anxiety, depression, [and] personality issues."  (AR 335.)  Falconi has treated with psychiatrist Dr. Jonathan Schwartz from the Department of Veterans Affairs since 2004, and in April 2010, Dr. Schwartz stated that Falconi "has a well-documented history of Bipolar Affective Disorder" and "has been hospitalized 16 times on [the VA's] inpatient unit since 2002 for this condition."  (AR 86.)  Dr. Schwartz also recorded that Falconi continued to have "severe symptoms which include[d] depression, irritability, distractibility when hypomanic, and suicidal ideation."  (*Id.*)  He opined that Falconi's disorder was "unlikely to change in the next [two] years in large part based on the constancy of Mr. Falconi's

symptoms despite intensive treatment." (*Id.*) Around the same period, Daniel Guertin, Falconi's treating therapist since 2005, wrote that, based on his review of Falconi's "history of care, it is clear that his BiPolar [sic] condition influence[s] patterns of addiction and an inability to work." (AR 87.)

In sum, the record reflects an individual with consistent and long-standing mental health impairments, who has been diagnosed by several medical providers over the course of decades with mental disorders including antisocial personality disorder, borderline personality disorder, bipolar disorder, anxiety disorder, and major depression. The ALJ's decision fails to adequately acknowledge this clear depiction in the record. Moreover, the ALJ's constricted focus on the lack of medical records from the insured period is inconsistent with the requirements of SSR 83-20. Given the lack of precise evidence as to the onset of Falconi's disability, SSR 83-20 required the ALJ to infer the date of disability based on "an informed judgment of the facts in th[is] particular case." SSR 83-20, 1983 WL 31249, at *3. A medical advisor could have assisted the ALJ in making this inference. SSR 83-20 states that, at the administrative hearing, the ALJ "should call on the services of a medical advisor when [the] onset [date] must be inferred." SSR 83-20, 1983 WL 31249, at *3; *see Plumley*, 2010 WL 520271, at *8 (citing *Kelly v. Astrue*, No. 06-168-P-S, 2007 WL 2021923, at *7 (D. Me. July 11, 2007)); *Felicie v. Apfel*, No. 95 Civ. 2832(LAP), 1998 WL 171460, at *3-4 (S.D.N.Y. Apr. 13, 1998).

Although SSR 83-20 does not mandate that a medical advisor be called in every case, courts have construed this step to be 'essential' when the record is ambiguous

regarding onset date.[8] *See, e.g., Katt v. Astrue*, 225 F. App'x 455, 456 (9th Cir. 2007); *Briscoe v. Barnhart*, 425 F.3d 345, 353 (7th Cir. 2005); *Spellman v. Shalala*, 1 F.3d 357, 363 (5th Cir. 1993). Here, Falconi claims disability as a result of longstanding mental illness, and alleges an onset date far in the past. Given these facts, it is not surprising that there is not a complete medical chronology of Falconi's impairments in the record and thus that there is ambiguity as to when Falconi's disability began. *See, e.g., Beasich v. Comm'r of Soc. Sec.*, 66 F. App'x 419, 429 (3d Cir. 2003) ("The fact that a claimant may be one of the millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis to reject that an impairment existed.") (internal quotation and citation omitted). Even had the ALJ attempted to decipher the disability onset date (which he did not), he could not have done so without the aid of a medical advisor, who could have made medical inferences based on the medical and other evidence. *See DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991) ("In the event that the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the [ALJ] to call upon the services of a medical advisor."); *Bailey v. Chater*, 68 F.3d 75, 79 (4th Cir. 1995) ("the date on which the synergy [of the claimant's numerous ailments] reached disabling severity remains an

---

[8] The Commissioner argues that "[o]ther courts, including this court [in *Gray v. Barnhart*, No. 2:00-CV-333, slip op. at 27-28 (D. Vt. Apr. 30, 2002)], have found that the absence of objective medical evidence during the relevant period negates any ambiguity in the record requiring the ALJ, pursuant to SSR 83-20, to call on a medical expert." (Doc. 9-1 at 7 (citing *Tyler v. Astrue*, 334 F. App'x 79, 80-81 (9th Cir. 2009); *Fontaine v. Astrue*, No. 07-18-P-S, 2007 WL 3023611, at *4 (D. Me. Oct. 12, 2007)). But *Gray* and the other cases cited by the Commissioner are distinguishable not only on their specific facts, but also because, in those cases, there was no prior determination of disability, and thus the procedures set forth in SSR 83-20 did not apply. *See, e.g., Nix v. Barnhart*, 160 F. App'x 393, 396-97 (5th Cir. 2005) (holding that absent an ALJ's finding of disability, there is no need to infer an onset date, and thus SSR 83-20's medical advisor requirement does not apply).

14

enigma. In the absence of clear evidence documenting the progression of [claimant's] condition, the ALJ did not have the discretion to forgo consultation with a medical advisor.").

A medical advisor is particularly useful in cases like this which involve slowly progressing mental impairments. *See, e.g., Spellman v. Shalala*, 1 F.3d 357, 363 (5th Cir. 1993) ("Because [claimant's] mental impairment was of a slowly progressive nature, and the medical evidence was ambiguous with regard to the disability onset date, the Appeals Council could not have inferred an onset date based on an informed judgment of the facts without consulting a medical advisor."); *Walton v. Halter*, 243 F.3d 703, 709-10 (3d Cir. 2001) (where previously-hospitalized claimant alleged disability based on slowly progressive bipolar disorder which arose more than 30 years in the past, ALJ was required to call on services of medical advisor rather than rely on his own lay analysis of evidence in inferring onset date, even though there was a lack of contemporaneous records).[9] According to the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), an "essential feature" of antisocial personality disorder, which Falconi was diagnosed with as early as 1984 (*see* AR 808), is "a pervasive pattern of disregard for, and violation of, the rights of others *that begins in childhood or early adolescence* and

---

[9] SSR 83-20 also recommends particular prudence in cases like this where the claimant suffers from a mental illness, explaining: "Because mentally ill persons may not be capable of protecting themselves from possible loss of benefits by furnishing necessary evidence concerning onset, development should be undertaken in such cases to ascertain the onset date of the incapacitating impairment. Contact with the individual's family, former employers, and other associates may lead to information about previous hospitalizations, medical treatment, or manifestations of symptoms prior to the current hospitalization." SSR 83-20, 1983 WL 31249, at *5. The ALJ in this case does not appear to have undertaken any attempt at supplementary development of the record, other than holding the record open for particular documentation discussed at the administrative hearing. (*See* AR 838.)

15

continues into adulthood." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV")*, at 645 (4th ed. 2000) (emphasis added). The DSM-IV further provides that people with antisocial personality disorder "fail to conform to social norms with respect to lawful behavior"; "may repeatedly perform acts that are grounds for arrest"; "tend to be irritable and aggressive"; and "tend to be consistently and extremely irresponsible," going long periods without working. *Id.* at 646. Similarly, the DSM-IV states that an "essential feature" of borderline personality disorder, which Falconi was also diagnosed with in 1984 (*see* AR 797), is "a pervasive pattern of instability of interpersonal relationships, self-image, and affects, and marked impulsivity *that begins by early adulthood* and is present in a variety of contexts." *DSM-IV*, at 650 (emphasis added). These descriptions accurately describe Falconi as reflected in the record before and after the insured period. Similarly, the DSM-IV includes as an "essential feature" of bipolar disorder, which Falconi appears to have first been diagnosed with in approximately 2004 (*see* AR 86-87, 252), "a clinical course that is characterized by the occurrence of one or more Manic Episodes or Mixed Episodes[, and] one or more Major Depressive Episodes." *DSM-IV*, at 350-51. Associated features include suicide and substance-related disorders. *Id.* at 352. Again, this description accurately describes Falconi as reflected in the record before and after the insured period.

The Court is hard-pressed to suppose that Falconi's mental impairments, including in particular his antisocial personality disorder and borderline personality disorder, appeared in the early 1980s, as the record reflects; then went away for a period including the insured period; and again reappeared in the early 1990s and beyond, as the record

16

reflects. More plausibly, Falconi's mental impairments existed throughout his life, in varying levels of severity. A medical advisor with experience in the particular mental impairments documented in the record could assist the ALJ in inferring when Falconi's impairments first became disabling.

Finally, although neither party addresses the issue in any detail, the Court would be remiss to ignore that Falconi's mental health problems appear to have been intertwined with his substance abuse problems during the insured period. The Court therefore recognizes the possibility that, even if a medical advisor opines Falconi had a medically determinable mental impairment during the alleged disability period, and even if the ALJ determines Falconi was disabled during that period, the ALJ may find that Falconi's substance abuse was a contributing factor material to that determination of disability. *See* 20 C.F.R. § 404.1535(a) (requiring that, if the ALJ finds the claimant is disabled, and there is medical evidence of the claimant's drug addiction or alcoholism, the ALJ "must determine whether [that] drug addiction or alcoholism is a contributing factor material to the determination of disability"). On remand, if the ALJ determines that the onset date of Falconi's disability was before or during the insured period, the ALJ must then grapple with and resolve the issue of whether Falconi would still have been disabled had he stopped using drugs or alcohol during the insured period. *Id.*; *see also* 20 C.F.R. § 404.1535(b)(1); *Frankhauser v. Barnhart*, 403 F. Supp. 2d 261, 272 (W.D.N.Y. 2005).

**Conclusion**

For these reasons, the Court finds in favor of Falconi. The Commissioner's argument fails to recognize the significance of the Social Security Administration's decision to grant Falconi SSI benefits beginning in October 2004. In view of this decision, the principal task of the ALJ was to determine the onset date of Falconi's disability, i.e., when Falconi's impairments first became disabling. SSR 83-20 mandates that this analysis be undertaken even though there is a lack of contemporaneous medical evidence documenting Falconi's mental condition as of his alleged July 1, 1988 disability onset date. As acknowledged by the Commissioner, the facts of this case are much like those in *Plumley* and *Larkin*. The Commissioner offers no persuasive reason for the Court to stray from the reasoning applied in those cases. There, as here, although there was no objective medical evidence from the alleged disability period, there was ample evidence from before and after that period which demonstrated that the respective claimants had long-term mental health problems. More importantly, in *Plumley* and *Larkin*, as in this case, there was an underlying finding of disability by the Social Security Administration and the primary issue for the ALJ was the date of onset of that disability.

The ALJ here did not follow the analysis set forth in SSR 83-20, and did not even attempt to determine or infer an onset date of Falconi's disability. Nor did the ALJ attempt to obtain the assistance of a medical advisor to resolve the record's ambiguity regarding Falconi's disability onset date, as required by SSR 83-20. Finally, the ALJ failed to properly analyze the impact of Falconi's substance abuse on his mental

impairments during the insured period.  Therefore, the Court GRANTS Falconi's motion (Doc. 8), DENIES the Commissioner's motion (Doc. 9), and REMANDS for further proceedings and a new decision in accordance with this ruling.

Dated at Burlington, in the District of Vermont, this 1st day of November, 2012.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge
